## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Rarity Abdullah,                                    Civil No. 06-1559  (DSD/SRN)

       Plaintiff,

v.

                                       **REPORT & RECOMMENDATION**

Eathan Weinzeirl, in his
individual capacity,
Steve Kortus, in his
individual capacity, and
Dana Banwer in her individual
and official capacity,

       Defendants.

---

Jill Clark, Esq., on behalf of Plaintiff

Toni Beitz, Esq., on behalf of Defendant Eathan Weinzeirl

Daniel Rogan, Esq., on behalf of Defendant Steve Kortus

James Moore, Esq., on behalf of Defendant Dana Banwer

---

Pending before the undersigned United States Magistrate Judge are Motions to Dismiss filed by Defendants Eathan Weinzeirl (Doc. No. 11); Steve Kortus (Doc. No. 14) and Dana Banwer (Doc. No. 30.)  Also before the Court is Plaintiff's Motion to Amend the Complaint, for a Protective Order, to Strike and for a Rule 56(f) Continuance (Doc. No. 45).  This Court has jurisdiction over these motions pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

### I.    BACKGROUND

In this action brought pursuant to 28 U.S.C. § 1983, Plaintiff has filed suit against Defendant

Eathan Weinzeirl, a Hennepin County sheriff's deputy; Defendant Steve Kortus, a Hennepin County probation officer; and Defendant Dana Banwer, head of the Criminal Division of the Minneapolis City Attorney's Office.  Although other defendants were initially in the case – State of Minnesota employees ( "State Defendants") –  Plaintiff voluntarily dismissed them.

The background of this case involves an underlying felony assault charge for which Plaintiff was arrested in September 2005.  (First Am. Complaint at ¶¶ 18-19.)  Plaintiff was conditionally released and assigned a probation officer, Defendant Kortus.  (First Am. Complaint at ¶ 20.)  On December 23, 2005, while on conditional release for the assault charge, Plaintiff was arrested on what he alleges were "trumped-up charges."  (First Am. Complaint at ¶¶ 25-26.)  He was booked on probable cause for fleeing and giving a false name to police, as well as other charges, which he maintains are false charges. Id.

On December 29, 2005, Defendant Kortus obtained a copy of the Minneapolis police report regarding the incident and arrest a few days earlier.  (First Am. Complaint at ¶ 35.)  Based on this report, he made a recommendation to the court that Plaintiff's conditional release be revoked for failing to stay law-abiding.  (First Am. Complaint at ¶¶ 35-36.)  According to Plaintiff, Kortus showed Hennepin County District Court Judge Lucy Wieland a copy of the December 23 police report, which she reviewed.  (First Am.  Complaint at ¶ 36.)  Plaintiff contends that this constituted an *ex parte* communication between the probation officer and the judge.  Id.  Plaintiff alleges, upon information and belief, that Defendant Kortus prepared a bench warrant stating that Plaintiff had violated his conditions of release because he was cited for loitering.  Id.  Plaintiff contends that this was inaccurate – Plaintiff's brother had been cited for this charge, not Plaintiff.  Id.

2

In early January 2006, Judge Lucy Wieland issued a bench warrant for Plaintiff for an alleged violation of his conditional release.  (First Am. Complaint at ¶ 36.)  Plaintiff alleges that the information supplied by Defendant Kortus, which led to the issuance of the warrant, was inaccurate.  Id.  Plaintiff appeared before Judge Wieland and "succumbed to pressure to plead guilty on the underlying case." (First Am. Complaint at ¶ 38.)  Following the guilty plea, the Complaint alleges that Judge Wieland informed Plaintiff that she had signed a warrant for his arrest for violating his conditional release.  Id. Plaintiff alleges that rather than advising Plaintiff of his right to a hearing on the alleged conditional release violation, Judge Wieland pronounced him guilty.  Id.

Plaintiff alleges that according to the court transcript, Judge Wieland admitted to communicating with the Minneapolis City Attorney's Office and "making an arrangement" to give the City time to decide whether to file criminal charges in connection with the December 23 incident.  (First Am. Complaint at ¶ 39.)  Plaintiff alleges that while the charges were not filed as of January 4, 2006, Judge Wieland nevertheless scheduled the matter for a January 23, 2006 court appearance.  Id.

On January 12, 2006, Plaintiff alleges that he attended a court proceeding in Hennepin County District Court in which his brother was a criminal defendant.  (First Am. Complaint at ¶ 53.)   As he left the proceeding, he alleges that Defendant Weinzeirl, a Sheriff's Deputy assigned to court security, shouted, "you dropped your marijuana," feigned picking up an item from the floor, and held up a small baggie.  (First Am. Complaint at ¶ 54.)  Plaintiff denied dropping any marijuana and alleges that the allegation was fabricated and that the drugs, if any, were planted.  (First Am. Complaint at ¶ 55.)

After being taken into custody, Plaintiff was released with a "ticket" charging him with possession of a small amount of marijuana.  (First Am. Complaint at ¶ 58.)  He maintains that he

promptly attempted to obtain a court date, but was told that it was not possible because the ticket lacked an incident date.  Id.  Next, Plaintiff alleges that he telephoned his probation officer, Defendant Kortus, to report the incident and he asked for Kortus's assistance in order to avoid a custodial arrest on a warrant.  Id.  The Amended Complaint further alleges that Kortus failed to return Plaintiff's phone call and that Plaintiff waited for weeks, "wondering if he was about to be arrested and jailed on the false ticket."  (First Am. Complaint at ¶ 60.)

Plaintiff contends that in early February 2006, someone, believed to be Kortus, filled out a form for Plaintiff's arrest, claiming that Plaintiff had failed to maintain contact with Probation and that his whereabouts were unknown.  (First Am. Complaint at ¶¶ 60- 61.)   Plaintiff, however, alleges that he made several contacts with Kortus, up until Kortus sought an arrest warrant.  (First Am. Complaint at ¶ 61.)

The Amended Complaint then states that Plaintiff was arrested and taken to jail.  (First Am. Complaint at ¶ 62.)  Much of the Amended Complaint concerns actions involving Judge Wieland, who has since been dismissed from the case.  Plaintiff also alleges that Defendant Dana Banwer, manager of the Criminal Division of the Minneapolis City Attorney's Office, engaged in *ex parte* communications with Judge Wieland involving the prosecution of criminal cases in general, and Plaintiff's case in particular.  (First Am. Complaint at ¶ 79.5.)

As a result of these allegations, Plaintiff claims that Defendants, acting under color of state law, deprived him of his constitutional rights, including the rights to due process, freedom from illegal search and seizure and equal protection.  (First. Am. Complaint at ¶ 87.)

## II.    DISCUSSION

As noted, Defendants have each filed a motion to dismiss and Plaintiff has filed several motions, which the Court will address collectively in this Report & Recommendation.

**A.     Motions to Dismiss**

In considering a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the complaint as true.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  All reasonable inferences from the complaint must be drawn in favor of the nonmoving party.  Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996), cert. denied, 519 U.S. 1149 (1997).  Dismissal is appropriate only if "it appears beyond a doubt that the plaintiff can prove no set of facts which would entitle the plaintiff to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

**1.     Defendant Banwer**

In her motion to dismiss, Defendant Banwer argues that she is entitled to absolute immunity from civil rights suits such as this for the performance of duties which are "integral parts of the judicial process," as long as the judicial function was granted common law immunity at the time § 1983 was enacted.  (Def. Banwer's Mem. Supp. Mot. Dismiss at 4) (citations omitted).  Defendant Banwer also argues that Plaintiff's claims against her fail because he makes no allegation as to the actual deprivation of rights caused by Ms. Banwer.  (Id. at 7.)

Plaintiff argues that Ms. Banwer is an administrator, not a prosecutor, and therefore cannot shield herself from suit on grounds of absolute immunity.  (Pl.'s Mem. Resp. to Banwer's Mot. Dismiss at 1-2.)

"Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the

protections of absolute immunity." <u>Buckley v. Fitzsimmons</u> 509 U.S. 259, 273 (1993). However,

when a prosecutor  "functions as an administrator rather than as an officer of the court," he is entitled

only to qualified immunity.  <u>Id.</u> (<u>citing</u> <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431, n. 33 (1976)).  The

Supreme Court in <u>Buckley</u> stated that where the prosecutor's role is similar to that of a detective

gathering evidence, the prosecutor is acting in an administrative capacity, for which only qualified

immunity is available.  <u>Id.</u>  This is in contrast to a prosecutor's role in evaluating evidence and

interviewing and preparing witnesses for trial – activities to which absolute immunity applies.  <u>Id.</u>

Turning to the allegations against Ms. Banwer, while she is described in the First Amended

Complaint as a "manager," rather than a "prosecutor," the approach taken by the Supreme Court in

<u>Buckley</u>, is a functional approach, not one of semantics.  The First Amended Complaint alleges that

Ms. Banwer is the manager of the Criminal Division of the Minneapolis City Attorney's Office.  (First

Am. Complaint at ¶ 79.5.)  The claims against Ms. Banwer allege *ex parte* communications between

Ms. Banwer and Judge Wieland: "it is reported that Banwer tells Judge Wieland what she (individually

and/or the MCAO) would like to accomplish."  <u>Id.</u>  Plaintiff further alleges,"Upon information and

belief, some of the undisclosed communications between Banwer and Wieland are designed to protect

police or the City from civil liability. . . .  Upon information and belief, Banwer was involved in

communications about Rarity Abdullah's case/s in January 2006."  <u>Id.</u>

In addition, Plaintiff alleges that Judge Wieland admitted to communicating with the Minneapolis

City Attorney's Office as to whether the City would file criminal charges regarding a December 23,

2005 incident in which Plaintiff was involved.  (<u>see</u> First Am. Complaint at ¶¶ 38-39.)  Finally, Plaintiff

alleges that the "City Prosecutor," presumably Banwer, received an email instructing her to enter a

ticket for loitering into the system.  (First Am. Complaint at ¶ 49.)

Even assuming that the allegations of *ex parte* contact are true, as the Court must assume on a 12(b)(6) motion to dismiss, the allegations here are merely speculative and lacking in factual support. Moreover, the allegations concern communications relating to Ms. Banwer's role as a prosecutor, not as an administrator.  If she were involved in such communications with Judge Wieland, the allegations do not concern investigative or "detective" work, as <u>Buckley</u> describes, but concern the prosecutor's evaluation of criminal charges.  Prosecutorial immunity has been broadly applied by courts.  <u>See Ashelman v. Pope</u>, 793 F.2d 1072 (9th Cir. 1986) (conspiracy between judge and prosecutor to predetermine outcome of proceeding did not pierce prosecutorial immunity); <u>Graves v. Hampton</u>, 1 F.3d 315, 318 n. 9 (5th Cir. 1993) (even where prosecutor was accused of knowingly using perjured testimony, immunity still applied).  While *ex parte* communications may violate civil liberties when a party is deprived from seeing all adverse evidence and from cross-examining witnesses, <u>Barlau v. City of Northfield</u>, 568 F.Supp. 181, 186 (D. Minn. 1983), Plaintiff has made no such allegation in the First Amended Complaint.  Accordingly, the Court concludes that Ms. Banwer is entitled to absolute immunity.

Even if the Court concluded that absolute immunity did not apply, however, Plaintiff still fails to state claims upon which relief can be granted.  Plaintiff alleges violations of both procedural and substantive due process; equal protection; and freedom from illegal search and seizure, none of which survive as will be discussed in turn.  (First Am. Complaint at ¶87.)

Procedural due process requires that before a significant deprivation of liberty or property at the state's hands, the affected person must be forewarned and afforded an opportunity to be heard "at

a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965).

Procedural due process is simply "a guarantee of fair procedure." Zinermon v. Burch, 494 U.S. 113

(1990). The Eighth Circuit has stated that the due process clause affords an individual the "opportunity

to be confronted with all adverse evidence and to have the right to cross-examine witnesses." Nevels

v. Hanlon, 656 F.2d 372, 376 (8th Cir. 1981).

Plaintiff has not alleged that he was deprived of a cognizable liberty interest. He was not

prosecuted for the December 23, 2005 incident. Accordingly, the Court finds that his claim for a

violation of procedural due process – as it relates to all of the Defendants – fails.

As noted, Plaintiff also alleges a violation of substantive due process. Substantive due process

claims implicate "the essence of state action." Amsden v. Moran, 904 F.2d 748-753-54 (1st Cir.

1990). "Such a claim rests not on perceived procedural deficiencies but on the idea that the

government's conduct, regardless of procedural swaddling, was in itself impermissible." Id. It is

designed to protect against state action which is "arbitrary and capricious," runs counter to "the concept

of ordered liberty," or appears "shocking or violative of universal standards of decency." Id. (internal

citations omitted). As Defendant Banwer notes, even bad faith violations of state law do not

necessarily rise to the level of unconstitutional deprivations of due process. (Def. Banwer's Mot.

Dismiss at 8) (citing Chongris v. Board of Appeals, 811 F.2d 36, 42 (1st Cir. 1987)).

Here, Plaintiff alleges that *ex parte* communications occurred between Ms. Banwer and Judge

Wieland regarding the scheduling of a hearing related to the December 23, 2005 incident. As noted

earlier, Plaintiff fails to state a claim because the allegations regarding Ms. Banwer consist of sheer

speculation. Again, even if the allegations contained more factual support, the basic allegations against

Ms. Banwer do not rise to the level of conscience-shocking conduct that implicates substantive due process.

Finally, Plaintiff alleges that he was subjected to an unconstitutional search and seizure, in the form of false arrest, and to a violation of the Equal Protection Clause. The First Amended Complaint does not link Ms. Banwer to either claimed violation. There is no allegation connecting Ms. Banwer to a Fourth Amendment violation for unconstitutional search and seizure. In addition, Plaintiff's Equal Protection claim fails because he fails to establish the requirements for such a claim, namely, that he is a member of a protected class and that a state action had both a discriminatory effect on him and a discriminatory purpose. See Wayte v. United States, 470 U.S. 598, 608 (1985). Plaintiff must allege that similarly situated persons of a different class were not prosecuted. While Plaintiff alleges that he is African-American, he does not allege that any state actor, including Ms. Banwer, treated him differently on account of race.

Finally, Plaintiff seeks injunctive relief. He fails to specify what type of relief he seeks, or how it implicates Defendant Banwer. Accordingly, his claims against Ms. Banwer fail for all of the above reasons. The Court therefore recommends that Defendant Banwer's motion to dismiss be granted.

## 2.    Defendant Kortus

In his motion to dismiss, Defendant Kortus argues that Plaintiff's claims against him are barred for three reasons: (1) Kortus's actions are protected by absolute immunity; (2) Plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), and its progeny, because the revocations challenged here have not been reversed on appeal or through habeas corpus proceedings; and (3)

Plaintiff's factual allegations against Defendant fail to state a claim.  (Def. Kortus's Mem. Supp. Mot. Dismiss at 1-2.)

Again, the allegations concerning Mr. Kortus are that he inaccurately reported that Plaintiff had been cited for loitering (First Am. Complaint at ¶ 36), which led to the issuance of a bench warrant for Plaintiff and that he is believed to have prepared an arrest warrant for Plaintiff's failure to keep in contact and having unknown whereabouts (First Am. Complaint at ¶ 61).  Plaintiff maintains that he regularly maintained contact with Mr. Kortus.

While qualified immunity is generally sufficient to protect government officials in the exercise of their duties,  Burns v. Reed, 500 U.S. 478, 486-87 (1991), judges and officials who have duties that are "functionally comparable" to those of judges are, however, entitled to absolute immunity. Butz v. Economou, 438 U.S. 478, 513 (1978).   "This immunity, which  protects the independence of judges, administrative-law judges, and officials with similar duties, shields not only these decisionmakers, but also other individuals who perform discretionary tasks that play an "integral part [ ]" in the decisionmaking process."   Anton v. Getty,  78 F.3d 393, 395-396 (8th Cir. 1996) (citations omitted).

The Eighth Circuit held in Anton that probation officers are protected by absolute immunity when their actions involve the evaluation of facts, drawing of legal conclusions and making recommendations which play a significant part in the decisionmaking process. Id. at 396.  The parole and probation officers sued in Anton concluded that the prisoner plaintiff's release plan was unacceptable and recommended the delay of his parole.  Id.  The Eighth Circuit commented, "These tasks are similar to the ones performed by probation officers when they prepare a presentence report," and that a number of our sister circuits have held that because presentence reports are so closely

associated with the exercise of a judicial function, the probation officers who prepare them are entitled to absolute immunity.  Id.  (citations omitted).

In reaching its conclusion that the probation officers in Anton were entitled to absolute immunity, the Eighth Circuit distinguished its decision in Ray v. Pickett, 734 F.2d 370 (8th Cir. 1984).  Id. at 396 n. 5.   In Ray, the court held that two federal probation officers accused of filing a false parole-violation report were entitled only to qualified immunity.  Id. at 373.  The court stated that the effect of filing a violation report merely triggered further inquiry by another officer that might or might not lead to an administrative proceeding.  The court deemed such activity too far removed from the decision to revoke the plaintiff's parole to merit absolute immunity.  Id.

In a case within the Eighth Circuit that directly concerned the issuance of an arrest warrant, the court in Jensen v. Jorgenson, No. Civ. 03-4200, 2005 WL 2412379 (D. S.D. Sept. 29, 2005), held that the Executive Director of the South Dakota Board of Pardons and Paroles was entitled to absolute immunity for issuing a warrant of arrest for an alleged violation of parole.  Id. at *9.  The court stated, "Issuance of the arrest warrant was intimately related to the Parole Board's quasi-judicial function in deciding whether to revoke Jensen's parole or suspended sentence."  Id.  The court stated that the issuance of the arrest warrant was not solely an administrative or clerical act, but rather required the exercise of judgment, making it a quasi-judicial act, entitling the defendant to absolute immunity.  Id.

The situation here is similar to that in Anton and Jensen.  Mr. Kortus is alleged to have prepared bench warrant forms for Plaintiff's arrest on two occasions, claiming that Plaintiff had violated his conditions of release.  (See First Am. Complaint at ¶¶ 36.5; 61.)  As to the first warrant, Plaintiff alleges that Kortus had obtained a copy of the Minneapolis Police report regarding the December 23,

2005 incident.  (First Am. Complaint at ¶ 35.)  Knowing that Plaintiff was on conditional release, it is not surprising that Kortus presented such information to the judicial decision maker, Judge Wieland, for her review.  These bench warrants were not like the reports filed in Ray, which would trigger additional investigation, but were after-the-fact recommendations to the court regarding whether the violations at issue warranted revocation.  Mr. Kortus evaluated the facts before him, namely, the police reports, (see e.g., First Am. Complaint at ¶ 35), drew a legal conclusion and made a recommendation to the court which played a significant part in the decisionmaking process.   Accordingly, Mr. Kortus is entitled to absolute immunity and the Court recommends that his motion to dismiss be granted.

Having determined that absolute immunity applies to Mr. Kortus, the Court will not address the alternative arguments he advances in support of his motion to dismiss.

### 3.     Defendant Weinzeirl

In his motion to dismiss, Defendant Weinzeirl argues that the claims against him should be dismissed for failure to state a claim because the citation at issue is still pending and his claims are therefore barred by the doctrine stated in Heck v. Humphrey, 512 U.S. 477, 489-90 (1994).  (Def. Weinzeirl's Mem. Supp. Mot. Dismiss at 3.)

Plaintiff alleges that Defendant Weinzeirl, a Hennepin County Sheriff's Deputy, "planted" marijuana in Plaintiff's vicinity and falsely charged him with possession of marijuana.  (First. Am. Complaint at ¶ 54.)  In so doing, Plaintiff contends that Deputy Weinzeirl violated his constitutional rights under the Fourth, Fifth and Fourteenth Amendments to substantive and procedural due process, freedom from illegal search and seizure and equal protection.  (First Am. Complaint at ¶ 87.)

Defendant Weinzeirl argues that pursuant to Heck, a § 1983 cause of action for damages does

not accrue until the underlying conviction or sentence has been invalidated.  Heck involved a plaintiff

who had been convicted of voluntary manslaughter in state court.  While the appeal from his conviction

was pending, Heck sued the state court prosecutor and investigator in federal court on § 1983 claims,

alleging, *inter alia*, that they had conducted an unlawful investigation leading to his arrest.  The United

States Supreme Court affirmed the dismissal of Heck's federal case, stating:

> a § 1983 plaintiff must prove that the conviction or sentence has been reversed on
> direct appeal, expunged by executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into question by a federal court's
> issuance of a writ of habeas corpus. . . .  A claim for damages bearing that relationship
> to a conviction or sentence that has *not* been so invalidated is not cognizable under §
> 1983.

Id.  at 489-90.

Deputy Weinzeirl points to Wiley v. City of Chicago, 361 F.3d 994 (7th Cir. 2004),

cert. denied, 543 U.S. 819 (2004), a Seventh Circuit decision involving similar facts.  In Wiley, the

plaintiff was an arrestee who brought a § 1983 action against the city, alleging that he was arrested on

the basis of planted evidence.  Applying Heck, the court stated that if Wiley was arrested and

prosecuted solely on the basis of planted drugs, then any attack on his arrest would necessarily

challenge the legality of the prosecution regarding the planted drugs. Id. at 997.  The court noted that

the Heck rule applied equally to convicted persons and persons awaiting prosecution.  Id.  at 996.

Accordingly, the court held that Wiley's § 1983 action premised on false arrest could not proceed until

the underlying criminal charges were dismissed, reasoning:  "[A]ny civil suit against Officer Jones for

false arrest would necessarily imply the invalidity of a potential conviction, and Heck requires that

Wiley's Fourth Amendment claim would not begin to accrue until the charges were dismissed."  Id.

13

(citations omitted).

The parties here disagree about the disposition of the citation at issue.  Deputy Weinzeirl argues that the ticket is still pending, and is therefore unresolved.  Plaintiff essentially disputes the fact that the ticket is pending and also argues that the ticket produced by Defendant Weinzeirl is not the same ticket with which he was cited.

Plaintiff alleges that he received a ticket from Deputy Weinzeirl charging him with possession of a small amount of marijuana, but the ticket contained no incident date.  (First. Am. Complaint at ¶ 58.) He claims that he tried to obtain a voluntary court date, but because the ticket lacked a date, he was told that a date could not be scheduled.  Id.   Plaintiff provided two copies of the undated ticket to the Court.  (Exs. 1 & 2 to Pl.'s Mem. in Opp. Weinzeirl's Mot. Dismiss.)

Deputy Weinzeirl presented another version of the ticket to the Court, nearly identical to Plaintiff's, except that it contained an incident date.  Under Fed. R. Civ. P. 12, a court may consider certain documents outside of the four corners of the complaint if they are matters of public record without converting the motion into one for summary judgment.  See State ex rel. Nixon v. Coeur d'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999), cert. denied, 527 U.S. 1039 (1999).  Plaintiff concedes that Rule 12 permits parties to provide the Court with copies of documents referenced in the Complaint (Pl.'s Mem. Opp. Weinzeirl's Mot. Dismiss at 4), however, Plaintiff argues that it is not proper to dispute the version of the document referenced in the Complaint on a Rule 12(b)(6) motion. Finally, the parties' letters also reference a disagreement about whether a plea agreement between Plaintiff and a Minneapolis City prosecutor was intended to dismiss all city citations and to vacate judgments against Plaintiff.

As an initial matter, the Court addresses Plaintiff's argument that Defendant's motion must fail because Heck functions as an affirmative defense, not a jurisdictional bar.  (Pl.'s Mem. Opp. Def. Weinzeirl's Mot. Dismiss at 5-6.)  Plaintiff contends that, as such, Defendant bears the burden of proof to establish an affirmative defense.  Defendant Weinzeirl, however, correctly cites many cases in which courts have dismissed complaints on Heck grounds pursuant to 12(b)(6) motions.  (Def. Weinzeirl's Reply Mem. Supp. Mot. Dismiss at 4) (citing, e.g., Wiley, 361 F.3d 994; Beck v. Muskogee Police Dep't, 195 F.3d 553, 557 (10th Cir. 1999); Washington v. Summerville, 127 F.3d 552, 556 (7th Cir. 1997), cert. denied, 523 U.S. 1073 (1998).  While some cases may proceed further and permit discovery on Heck issues, as Plaintiff observes, there is no such requirement to do so.  The Supreme Court in Heck stated that the burden of proof is squarely upon the plaintiff to establish that the conviction or sentence has been reversed.  Heck, 512 U.S. at 486.  Accordingly, the Court addresses Deputy Weinzeirl's motion on the merits.

Here, the dispute surrounds whether the citation in question has been resolved.   At the motions hearing, the parties sought additional time to try to resolve the disagreement by securing additional information, if any, about the status of the citation.  The parties agreed to report back to the Court on their findings and did so by letters to the Court.[1]   In his status report letter, Defendant Weinzeirl states that the citation is still open and has been sent to a collection agency as it had not been paid nor set for court hearing.  (Letter of 9/14/06 from T. Beitz to Mag. J. Nelson.)  Plaintiff, however, responds primarily with a legal argument, arguing that there is no "pending" state court matter because the citation

---

[1]The Court notes that it simply requested a factual status report – not legal argument – from the parties.  Therefore, the Court views any legal arguments in the parties' letters as not properly before the Court.

concerned a petty misdemeanor.  Plaintiff argues that because a petty misdemeanor is not a  "crime"

under Minnesota law, <u>Heck</u> is inapplicable because Plaintiff cannot be convicted or sentenced.  (Letter

of 9/18/06 from J. Clark to Mag. J. Nelson.)    The Court notes that Plaintiff raised this legal issue for

the first time in his status report letter to the Court and not in any formal filing.

Although Plaintiff's argument regarding the status of a petty misdemeanor is not properly before

the Court, the Court will briefly address it.  It is true that under Minnesota law, "'Petty misdemeanor'

means a petty offense which is prohibited by statute, which does not constitute a crime and for which a

sentence of a fine of not more than $300 may be imposed."  Minn. Stat. § 152,015, Subd. 4.  But it is

also the case that the Minnesota Rules of Criminal Procedure generally treat petty misdemeanors as a

subclass of misdemeanors punishable within certain statutory limits,  <u>Minnesota v. Tessema</u>, 515

N.W.2d 626, 627 (Minn. 1994) (<u>citing</u> Minn. R. Crim. P. 23.01), and other courts have addressed the

<u>Heck</u> bar in the context of misdemeanor charges or convictions.  <u>See</u>, <u>e.g.</u>, <u>VanGilder v. Baker</u>, 435

F.3d 689 (7th Cir. 2006); <u>Cummings v. City of Akron</u>, 418 F.3d 676 (6th Cir. 2005); <u>Prokop v.</u>

<u>Colorado</u>, 30 Fed.Appx. 820 (10th Cir. 2002) (unpub. op.)   As other courts have applied <u>Heck</u> in the

misdemeanor context, the Court does not view that classification as dispositive.

The different versions of the ticket and the continuing disagreement about the underlying facts of

the citation also are not determinative of the issue before the Court.   Instead, the Court focuses solely

on the allegations in the Complaint, and whether Plaintiff states a claim.  Plaintiff plainly alleges that he

was issued a "ticket," or citation, on false charges of possession of marijuana.  (First Am. Complaint at

¶ 58.) The Complaint also alleges that when Plaintiff attempted to obtain a court date, he was informed

that because his citation lacked an incident date, a court date could not be provided.  <u>Id.</u>  At that point,

16

the Complaint is silent as to the disposition of the charge.  While Deputy Weinzeirl avers that it is still

pending and Plaintiff claims never to have received notices about the citation, the Complaint itself does

not address the ultimate question of whether the charges against him were resolved in his favor or

dismissed.  Plaintiff's § 1983 claim against Deputy Weinzeirl is for false arrest based on the planting of

drugs.  (First Am. Complaint at ¶¶ 54-59.)  Any attack on his arrest would necessarily challenge the

legality of a prosecution regarding the planted drugs.  Accordingly, because under <u>Heck</u>, Plaintiff's

claim does not accrue until the charges against him are resolved, his § 1983 claim against Deputy

Weinzeirl is not cognizable under law and the Court recommends its dismissal without prejudice.

### B.       Plaintiff's Motions

Plaintiff's motions include a motion to amend the First Amended Complaint; a motion to strike,

a motion for a protective order; and a motion for a Rule 56(f) continuance.

### 1.       Motion to Amend the Complaint

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when

justice so requires."  Moreover, "denial of leave to amend pleadings is appropriate only in those limited

circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment,

or unfair prejudice to the non-moving party can be demonstrated." <u>Roberson v. Hayti Police Dep't</u>,

241 F.3d 992, 995 (8th Cir. 2001).  Even if the adverse party would suffer some prejudice if the

motion to amend were granted, the anticipated prejudice must be balanced against the hardship to the

moving party if the motion is denied.  <u>Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 644 F.2d

690, 694 (8th Cir. 1981).  Leave to amend may be denied if the amendment would not be able to

withstand a motion to dismiss, <u>see e.g.</u>, <u>Weimer v. Amen</u>, 870 F.2d 1400, 1407 (8th Cir. 1989),

17

because "[t]he liberal amendment rules of [Rule] 15(a) do not require that courts indulge in futile gestures." Holloway v. Dobbs, 715 F.2d 390, 392-93 (8th Cir. 1983).   Ultimately, the decision to grant or not grant leave to amend is entrusted to the sound discretion of the trial court. Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund, 800 F.2d 742, 749 (8th Cir. 1986).

At the time of the filing of Plaintiff's motion to amend, the State Defendants remained in the case.  To the extent that certain of Plaintiff's proposed amendments pertain to the now-dismissed State Defendants, Plaintiff's motion to amend should be denied as moot.

Plaintiff correctly states that motions to amend should be allowed where the proposed amended language merely states alternate theories of recovery based on the same set of operative facts (Pl.'s Mem. Supp. Mot. Am. at 2); and where a plaintiff seeks to add new defendants who are employees of the named Defendants and where the claims are based on the same set of operative facts as already alleged. Id. (citations omitted).  Specifically, the Proposed Second Amended Complaint adds additional factual allegations pertaining to Defendants Banwer, Kortus and Weinzeirl, as well as the now-dismissed State Defendants.

In addition to his formal motion to amend,  via a September 18, 2006 letter to the Court, Plaintiff seeks leave to further amend the Complaint.  In the letter, Plaintiff requests leave to amend to remove the names and information related to the State Defendants, who are no longer in the case, and to add a state law claim of abuse of process against Weinzeirl and the County.   The Court notes that, as a housekeeping matter, Plaintiff may amend to simply remove defendants and allegations where the defendants in question have been dismissed, but Plaintiff may not move to add entirely new causes of

18

action without a formal motion.

### a.    Defendant Kortus

As to the amendment concerning Defendant Kortus, Plaintiff's proposed amendment includes not only additional factual allegations, but Plaintiff seeks to sue him in his official capacity.  Defendant Kortus argues that Plaintiff's motion should be denied on grounds of futility.  Specifically, he argues that there are no new factual allegations regarding his actions in January and February 2006 that alter the analysis in his motion to dismiss; that Plaintiff's attempt to bring a claim for injunctive relief against him in his "official capacity" fails as a matter of law; and that Plaintiff's request for prospective injunctive relief fails as a matter of law.

While the Court notes that it has concluded that Defendant Kortus's Motion to Dismiss should be granted, nevertheless, it will briefly address Plaintiff's motion to amend as it relates to Mr. Kortus.

Defendant Kortus is correct that the proposed allegations do not alter the Plaintiff's claims against him.  The proposed language relates to motivation, conspiracy and allegations about whether state procedures were followed.  (Proposed Second Am. Complaint at § 4.)  These proposed allegations are futile.

Under the Eleventh Amendment, actions for damages against the state in federal court are barred, absent consent or congressional enactment.  Kentucky v. Graham, 473 U.S. 159, 169 (1985); Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976); Egerdahl v. Hibbing Community College, 72 F.3d 615, 619 (8th Cir. 1995).  In addition, a suit for damages is prohibited "even though individual officials are nominal defendants," because such a suit is construed as a suit against the state.  Edelman v. Jordan, 415 U.S. 651, 653 (1974).  "While Minnesota has waived its sovereign immunity to some

19

extent in Minn.Stat. § 3.736 [Minnesota Tort Claims Act], the language of subdivision 2 of that section does not clearly show that Minnesota intended to waive any claim of sovereign immunity in federal court." DeGidio v. Perpich, 612 F.Supp. 1383, 1389 (D.Minn.1985) (finding that the Eleventh Amendment barred plaintiffs' § 1983 and pendent state claims against the defendants sued in their official capacities).

Moreover, in addition to the Eleventh Amendment, § 1983 damage claims are barred against state entities and officials acting in their official capacities, as they are not "persons" for § 1983 purposes. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.")

A state agent, however, may be sued in his official capacity if the Plaintiff merely seeks injunctive or prospective relief for a legally cognizable claim. Id.; Nix v. Norman, 879 F.2d 429, 432 (8th Cir. 1989). Declaratory and injunctive relief are available only if the plaintiff asserts a substantial immediate threat that he will again be harmed. See Martin v. Sargent, 780 F.2d 1334, 1336 (8th Cir. 1985). Regarding the allegations of communication lapses caused by Kortus, Plaintiff states, "The issue is capable of repetition yet evading review." (Proposed Second Am. Complaint at § 4.) This allegation does not constitute an assertion of a substantial, immediate threat. Accordingly, the Court recommends that Plaintiff's motion to amend regarding Mr. Kortus be denied.

While the Court has made its determination based on the reasoning above, it also agrees with the additional reasons for denying Plaintiff's motion set forth by Defendant Kortus in his memorandum, e.g., the Rooker-Feldman doctrine precludes Plaintiff's proposed amendments because Plaintiff did not

appeal the decisions regarding the revocation of his release.

### b.      Defendant Banwer

Plaintiff's proposed amendments related to Ms. Banwer are based on additional details as to the dates and times of activities of other Defendants, as well as the parenthetical statement in ¶ 79 that, "(Banwer does understand that a conviction for the incident in state criminal court can preclude a federal civil rights action for the MPD/City.)"  (Proposed Second Am. Complaint at ¶ 79.)

The proposed assertions do not add anything essential to the case and the Banwer-specific allegation quoted above is not so much a factual assertion as it is a presumption.  For all of the reasons discussed *supra*, including the speculative nature of Plaintiff's allegations against Ms. Banwer, the Court concludes that Plaintiff's proposed amended claims against Ms. Banwer would be futile and therefore, the Court recommends the denial of Plaintiff's motion to amend.

### c.      Defendant Weinzeirl

Plaintiff seeks to amend to add various factual allegations relating to Deputy Weinzeirl.  For example, he seeks to amend to assert that the Hennepin County Sheriff's Office provides "certain services" to the Fourth Judicial District by agreement and he adds allegations regarding the differences in the citation given to Plaintiff compared to the citation filed with the Court. (Proposed Second Am. Complaint at ¶ 3.)   Also, Plaintiff seeks to add the following allegation with respect to the citation: "Rarity Abdullah has not been sent a summons (apparently a new way of handling tickets in the Fourth Judicial District, but the back of the ticket does not yet indicate the new system, and he was never hailed to court; he was unable to set up his own court date and he has no knowledge of what Weinzeirl did with the green portion of the ticket)."  (Proposed Second Am. Complaint at ¶ 60.)  Finally, Plaintiff

seeks to amend to correct the spelling of Defendant's name, previously misspelled as Weinveirl.

For the reasons discussed previously relating to Heck v. Humphrey, the proposed amendments regarding the citation are futile.  Plaintiff's proposed amendment does not address the resolution of the citation.  In addition, the proposed factual allegations do not add an alternative theory to the case.  For these reasons, the Court recommends that Plaintiff's motion to amend claims relating to Deputy Weinzeirl be denied.  Finally, while ordinarily Plaintiff would be granted leave to amend to correct the misspelling of a parties' name, based on the Court's determination, the Court recommends that that motion to amend be denied as moot.

## 2.       Motion to Strike

Plaintiff moves the Court for an Order striking portions of the Defendants' Rule 12 Motions to Dismiss, arguing that because many of the Defendants filed documents not found in the Complaints, Defendants may have converted their Rule 12 motions into summary judgment motions.

Plaintiff refers to the affidavit of Toni Beitz, Deputy Weinzeirl's counsel, in which she avers that an exhibit, i.e., a citation, is a "true and correct copy," of the ticket served upon Plaintiff.   In providing the background of the parties' dispute, the Court noted, *supra,* the existence of the different citations – citations which both Plaintiff and Deputy Weinzeirl submitted with their memoranda.  However, in reaching its decision on Defendant Weinzeirl's motion to dismiss, pursuant to Rule 12, the Court carefully confined its analysis to the allegations in the First Amended Complaint, ignoring the citation exhibits altogether.  Accordingly, Plaintiff's motion to strike the affidavit of Ms. Beitz should be denied as moot.

Plaintiff similarly points to evidence submitted by the now-dismissed State Defendants,

Defendant Banwer and Defendant Kortus. Plaintiff's motion to strike likewise should be denied as moot with respect to these parties. The State Defendants are no longer in the case and the information to which Plaintiff objects as it relates to the Rule 12 motions of Banwer and Kortus was not relied upon by this Court in reaching its decision.

### 3.    Motion for a Rule 56(f) Continuance

Plaintiff moves to strike any Rule 56 motions, any filings that might be converted into Rule 56 motions and moves to strike "the Rule 56 nature of Defendant Weinzeirl's factual disputes." As stated herein, in ruling on the Defendants' Rule 12 motions, the Court confined its attention and analysis strictly to the allegations as pled in the First Amended Complaint. Defendants' motions were not converted into Rule 56 motions, nor was any factual information submitted by Defendants relied upon by the Court in reaching its conclusions. Accordingly, Plaintiff's motion for a continuance should be denied as moot.

### 4.    Motion for a Protective Order

Plaintiff moves for a protective order aimed at the preservation of evidence. It appears that a great deal of the evidence at issue concerned the State Defendants, who have since been dismissed from the case. At the motions hearing, Plaintiff's counsel indicated that the State's counsel had been cooperative with respect to document retention and access. Furthermore, at the motions hearing, Plaintiff's counsel also stated that it would be acceptable to her if defense counsel indicated an awareness of the evidence and the need for its identification and preservation. As that appears to be the case, Defendant's motion for a protective order should therefore be denied as moot.

Therefore, based upon the foregoing,

**IT IS HEREBY RECOMMENDED that:**

1.      Defendant Eathan Weinzeirl's Motion to Dismiss (Doc. No. 11) be **GRANTED;**

Dismissal is without prejudice;

2.      Defendant Steve Kortus's Motion to Dismiss (Doc. No. 14) be **GRANTED**;

3.      Defendant  Dana Banwer's Motion to Dismiss (Doc. No. 30) be **GRANTED**; and

4.      Plaintiff's Motion to Amend the Complaint, for a Protective Order, to Strike and for a

Rule 56(f) Continuance (Doc. No. 45) be **DENIED, in part**, and **DENIED AS**

**MOOT, in part**.

DATED:    September  22, 2006

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by **October 10, 2006** after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.